CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

April 12, 2024
LAURA A. AUSTIN, CLERK
BY:
        /s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

TRESILA LAMBERT,                          )
                                          )
        Plaintiff,                        )      Case No. 7:23-cv-319
                                          )
v.                                        )      By:    Michael F. Urbanski
                                          )      Chief United States District Judge
SANOFI US SERVICES, INC. et al.,          )
                                          )
        Defendants.                       )

## MEMORANDUM OPINION

This matter comes before the court on a Motion for Judgment on the Pleadings, ECF No. 34, filed by Defendants Sanofi US Services, Inc. and Sanofi-Aventis U.S. LLC and a Motion for Leave to Amend Complaint, ECF No. 35, filed by Plaintiff Tresila Lambert. Lambert filed her Short Form Complaint[1] directly in In re Taxotere (Docetaxel) Products Liability Litigation, MDL No. 2740, a multidistrict litigation ("MDL") consolidated in the United States District Court for the Eastern District of Louisiana against multiple pharmaceutical companies to recover for injuries associated with various chemotherapy drugs that plaintiffs took for the treatment of cancer. Plaintiffs in the MDL allege that various forms of the drug Taxotere and its generic, docetaxel, caused permanent chemotherapy induced alopecia ("PCIA").[2] See Case Management Order No. 39 (Summary of MDL 2740 Proceedings Upon Suggestion of Remand or Transfer), ECF No. 7-115, at 1–2 [hereinafter

---

[1] Each MDL plaintiff files a short form complaint, which incorporates by reference the operative Master Complaint. See Second Am. Master Compl., ECF No. 7-26.

[2] The MDL involved several different brands of Taxotere. Lambert alleges that she does not know which brand of the drug she used. See Short Form Compl., ECF No. 1, ¶ 9. For simplicity, the court will refer generally to the drugs as Taxotere.

Summary of MDL 2740] (summarizing the history of MDL proceedings for transferor courts).[3] Sanofi labels and distributes Taxotere and its generic counterpart, docetaxel. Second Am. Master Compl., ECF No. 7-26, ¶ 1. In her February 6, 2018, Short Form Complaint, Lambert alleges that she used an unknown brand of Taxotere to treat cancer from September 2010 until December 2010 and that, as a result, she suffers from PCIA. Short Form Compl., ECF No. 1, ¶¶ 10–12. Lambert's case was transferred to this court in May 2023 upon suggestion of transfer by the transferee court.[4] See Summary of MDL 2740, ECF No. 7-115.

Lambert, a Virginia resident, brings six claims under Virginia common law against Sanofi US Services Inc., a Delaware corporation with its principal place of business in New Jersey, and Sanofi-Aventis U.S. LLC, a Delaware limited liability company with Sanofi US Services Inc as its sole member. In her Short Form Complaint, Lambert asserts the following six causes of action: strict products liability, negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. Short Form Compl., ECF No. 1, ¶ 13.

Sanofi seeks judgment on all counts for three reasons. First, Sanofi argues that Virginia does not recognize strict products liability as a cause of action. Second, Sanofi contends that Lambert's negligence claim is time-barred by the statute of limitations and that no grounds

---

[3] Summary of MDL 2740 was originally entered in the MDL master docket. See Case Management Order 39, ECF No. 15834, No. 2:16-md-2740 (E.D. La. filed May 11, 2023). The order was also docketed as Exhibit B to the Transfer Order in this case, ECF No. 9.

[4] Under the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the transferee court "is the federal district court to which the Panel transfers an action pursuant to Section 1407, for inclusion in an MDL." R.P.J.P.M.L. 1.1(i). Here, the Panel designated the Eastern District of Louisiana as the transferee court. As relevant here, the transferor court "is the federal district court where . . . the Panel may remand the action at or before the conclusion of pretrial proceedings," that is, this court. R.P.J.P.M.L. 1.1(j).

exist to equitably toll the limitations period. Third, Sanofi asserts that Lambert's fraud claims are inadequately pled under Federal Rule of Civil Procedure 9(b).

In response, Lambert asks to file an amended complaint. The proposed amended complaint would replace Lambert's Short Form Complaint and eliminate any incorporation of the Second Amended Master Complaint, the operative master complaint in the MDL. Sanofi opposes this amendment because the proposed amended complaint changes the timing of Lambert's injury such that it is no longer clear from the face of the complaint that the limitations period on her negligence claim has expired. Sanofi also cites the significant body of litigation that occurred in the MDL pursuant to the Second Amended Master Complaint in opposition to Lambert's Motion to Amend. Notably, in 2019, the transferee court denied a request to submit a Third Amended Master Complaint with the same proposed change to the timing of plaintiffs' injuries. See Order, ECF No. 7-45.

The court finds that the law of the case dictates that Lambert is not permitted to amend her complaint in the manner she proposes. Further, no grounds exist to reconsider the MDL court's order denying plaintiffs leave to file a Third Amended Master Complaint. Accordingly, Lambert's Motion to Amend is **DENIED.** Under the operative complaint, that is, Lambert's Short Form Complaint and, by incorporation, the Second Amended Master Complaint, the court agrees with Sanofi's arguments as to each of Lambert's claims. Accordingly, Sanofi's Motion for Judgment on the Pleadings is **GRANTED.**

## I.

Lambert used Taxotere to treat breast cancer from September 2010 until December 2010. Short Form Compl., ECF No. 1, ¶ 4; Second Am. Master Compl., ECF No. 7-26, ¶ 4.

3

Lambert alleges that the drug caused PCIA, which she alleges "is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." Second Am. Master Compl., ECF No. 7-26, ¶ 181. She claims that this permanent hair loss was "a side effect for which [she was] not warned and [was] wholly unprepared," id. ¶ 5, and that defendants failed "to warn that permanent or irreversible hair loss is a common side effect of" the drug. Id. ¶ 7.

Like Lambert, Taxotere caused PCIA for many women. In October 2016, the Judicial Panel on Multidistrict Litigation ("JPML") transferred 28 civil actions to the Eastern District of Louisiana (the "transferee court") for consolidated proceedings. See Summary of MDL 2740, ECF No. 7-115, at 1. "The JPML concluded that these actions all shared common factual questions, including whether Taxotere . . . causes permanent hair loss, whether defendants were aware of this possible side effect, and whether they failed to warn patients." Id. Since its inception, the MDL has involved more than 15,000 lawsuits. Id.

Plaintiffs filed the Initial Master Complaint on March 31, 2017, and subsequently filed a First Amended Master Complaint to correctly identify certain named defendants. Id. at 2. Defendants filed a motion to dismiss the First Amended Master Complaint, which the transferee court granted in part by dismissing plaintiffs' claims for strict product liability for misrepresentation and breach of express warranty. Id. at 2–3. With leave of the court, plaintiffs filed a Second Amended Master Complaint on September 27, 2018. Id. at 3. Lambert filed her

Short Form Complaint directly in the MDL on February 6, 2018, incorporating by reference the Operative Master Complaint.[5] Short Form Compl., ECF No. 1.

The transferee court denied plaintiffs' motion for leave to file a Third Amended Master Complaint on December 12, 2019. In its Summary of MDL 2740, the court explained its decision:

> Plaintiffs had sought to amend the Master Complaint to no longer define PCIA as manifesting six months after chemotherapy. Plaintiffs' proposed amendment alleged that there is "no single definition" for PCIA, and therefore the amount of time to establish permanent hair loss varies from patient to patient. In denying [p]laintiffs' motion, this [c]ourt explained that "the main reason [p]laintiffs wish to amend the Long-Form Complaint at this juncture is to save cases that are otherwise subject to dismissal for being filed too late." All deadlines for [p]laintiffs to amend their individual complaints without leave of court have passed.

ECF No. 7-115, at 3–4. The court observed that "[t]he Second Amended Master Complaint remains the operative pleading," but clarified that "any fraud-based claims must be perfected within the short form complaints filed in the individual member cases." Id. at 3.

Many individual plaintiffs began to amend their Short Form Complaints in response to the court's statute of limitations ruling. On May 11, 2020, the transferee court entered an order that allowed plaintiffs to "amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." See Pretrial Order No. 105, ECF No. 7-51, at 1. The court set a deadline for plaintiffs to file amended Short Form

---

[5] Lambert's Short Form Complaint was not impacted by the court's dismissal of plaintiffs' claims for strict product liability for misrepresentation and breach of express warranty because she did not assert those claims. See Short Form Compl., ECF No. 1, ¶¶ 13–14.

Complaints, which the court then extended until January 15, 2021. <u>See</u> Stipulations, ECF Nos. 60, 73. Lambert never amended her Short Form Complaint.

The transferee court oversaw discovery, issued rulings on numerous pretrial motions, and conducted two bellwether trials. Relevant to Lambert's case are several summary judgment rulings entered by the court in 2019, 2020, and 2021 on statutes of limitations grounds under Louisiana and Mississippi law. <u>See</u> Summary of MDL 2740, ECF No. 9, at 23–27. Defendants filed numerous motions for summary judgment in individual plaintiffs' cases, arguing that their claims were time-barred. <u>Id.</u> The court addressed each of these motions pursuant to the law of the state in which the injuries occurred and concluded in each instance that plaintiffs' claims appeared time-barred. <u>Id.</u> The court then applied equitable tolling principles particular to each case's state law. <u>Id.</u> at 23.

The transferee court granted several of defendants' motions for summary judgment where plaintiffs did not file lawsuits within the applicable limitations periods. <u>Id.</u> For example, the court found that plaintiff Deborah Johnson completed her chemotherapy in 2010 "and testified that she did not think anything other than her chemotherapy caused her hair loss and that she became very concerned that her hair might not grow back at all as early as 2010." <u>Id.</u> at 23–24. Even where another plaintiff, Antoinette Durden, sought treatment for her hair loss from her doctor, the court granted defendants' motion for summary judgment because there was no "evidence showing that any of Ms. Durden's doctors told her, after her treatment, that regrowth can take time or that something else was causing her injury." <u>Id.</u> at 25.

The court also denied several of defendant's motions for summary judgment. <u>Id.</u> at 24–26. Like the cases in which the court granted summary judgment, these cases involved

plaintiffs who brought their claims after the limitations period under their respective state's law had run. Id. Unlike the other cases, however, the court found that equitable tolling principles may apply because evidence showed that these plaintiffs had been led to believe either that their hair would regrow or that the hair loss had some other cause. Id. For example, the court denied defendants' motion for summary judgment against Barbara Earnest because her doctor led her "to believe that her hair was just taking more time to regrow[] until 2016." Id. at 24. In plaintiff Elizabeth Kahn's case, the court denied summary judgment, finding that she "may have had reason to believe that something other than [defendants'] conduct caused her injury because Ms. Kahn's gynecologist told Ms. Kahn that her hair loss may be due to age." Id. at 25. Each of these summary judgment rulings rested on plaintiffs' assertions that PCIA manifests six months after the completion of chemotherapy.[6]

The Fifth Circuit affirmed two of the transferee court's rulings that plaintiffs' claims were time-barred under Louisiana's statute of limitations. See In re Taxotere (Docetaxel) Prods. Liab. Litig. (Thibodeaux), 995 F.3d 384 (5th Cir. 2021). Addressing the timing of plaintiffs' filings, the court explained that "as a matter of law, the injury of 'an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy' is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth." Id. at 390. According to their own definition of PCIA, the court held that plaintiffs' claims were facially prescribed because they filed their cases after

---

[6] Defendants also filed motions for judgment on the pleadings in the transferee court against plaintiffs in five other states, including Virginia, arguing that their claims were time barred by the applicable statutes of limitations. The transferee court denied these motions without prejudice, explaining that the motions are "to be re-urged in the respective district courts upon remand." Order, ECF No. 7-105.

Louisiana's one-year statute of limitations had lapsed. Id.; see also In re Taxotere (Docetaxel) Prods. Liab. Litig. (Durden), 860 F. App'x 886, 887 (5th Cir. 2021) (per curiam) (citing Thibodeaux) (affirming transferee court's finding that plaintiff's claims were time-barred because she filed her case "more than four years after she began to suffer permanent, chemotherapy-induced alopecia").

Lambert's case was transferred to this court on May 31, 2023. See Transfer Order, ECF No. 9. The court explained that "the purposes of consolidation have now been served," citing the "numerous discovery disputes, dispositive motions, and other pretrial issues involving factual and legal questions common to all cases in this MDL proceeding" resolved by the court. Id. at 2. The court noted that "[n]o further pretrial motions are pending in these cases, and transfer to the appropriate district courts appears to serve the interests of judicial efficiency." Id.

## II.

The court will first address Lambert's motion to amend. As the MDL court previously denied plaintiffs' motion for leave to file a Third Amended Complaint with the same proposed changes that Lambert seeks here, the law of the case dictates that the court must deny the motion.

Leave to amend a pleading pursuant to Rule 15(a) of the Federal Rules of Civil Procedure should be "freely granted."[7] Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002).

---

[7] The parties argue Lambert's motion to amend under the more lenient Rule 15(a) standard, but several transferor courts considering motions for leave to amend stemming from the Taxotere MDL have applied the stricter Rule 16(b) standard, which requires that a party show good cause to amend after a scheduling order has been entered. See, e.g., Provencher v. Sanofi US Servs. Inc., No. 2:23-cv-222, 2024 WL 1346645 (D. Me. Mar. 29, 2024); Fed. R. Civ. P. 16(b)(4). While this court has not issued a scheduling order in this case, the transferee court issued Pretrial Order 105, which provided individual plaintiffs with a certain window to amend their Short

"Leave to amend should be given absent some stated reason, such as undue delay, bad faith, futility, or undue prejudice to the opposing party." Red Bird Egg Farms, Inc. v. Pennsylvania Mfrs. Indem. Co., 15 Fed Appx. 149, 154 (4th Cir. 2001). Further, a court may deny leave to amend where the proposed amendment is "clearly insufficient or frivolous on its face." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 200 (4th Cir. 2014) (internal citation omitted).

"Like the multidistrict litigation system, the law of the case doctrine supports 'finality and efficiency [in] the judicial process.'" United States ex rel. Staley v. Columbia/HCA Healthcare Corp., 587 F. Supp. 2d 757, 761 (W.D. Va. 2008) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). "Generally, the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" Fusaro v. Howard, 19 F.4th 357, 367 (4th Cir. 2021) (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999)). The law of the case "must be followed in all subsequent proceedings in the same case . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."[8] Aramony, 166 F.3d at 661.

---

Form Complaints. See Pretrial Order 105, ECF No. 7-51. Lambert did not amend her Short Form Complaint during this time, and now seeks leave to do so after the window has closed. Transferor courts applying Rule 16(b) have treated Pretrial Order 105 as a scheduling order and concluded that plaintiffs have not shown good cause to amend. See, e.g., Provencher, 2024 WL 1346645, at *5 (collecting cases). Regardless, this court would deny Lambert's motion for leave to amend under either the Rule 15(a) or Rule 16(b) standard.

[8] Though the Fourth Circuit issued Aramony in the context of a previous appellate decision, the doctrine applies with equal force where a transferor court considers a transferee court's prior decision in an MDL. See Staley, 587 F. Supp. 2d at 761–62 (treating a transferee court's prior decision in the MDL as the law of the case for the purpose of evaluating a plaintiff's motion in the transferor court).

The Fourth Circuit has aptly described the rationale behind the law of the case doctrine in the MDL context:

> [I]t would be improper to permit a transferor judge to overturn orders of a transferee judge even though error in the latter might result in reversal of the final judgment of the transferor court. If transferor judges were permitted to upset rulings of transferee judges, the result would be an undermining of the purposes and usefulness of transfer under Section 1407 for coordinated or consolidated pretrial proceedings because those proceedings would then lack the finality (at the trial court level) requisite to the convenience of witnesses and parties and the efficient conduct of actions.

In re Food Lion, Inc., Fair Lab. Standards Act "Effective Scheduling" Litig., 73 F.3d 528, 531 (4th Cir. 1996) (quoting Weigle, S.A., The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts, 78 F.R.D. 575, 577 (1977)). Put simply, where an "'order was entered by one judge and then reviewed by another,' courts have held that the latter judge should be hesitant to overrule the earlier determination." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Harrell v. DCS Equip. Leasing Corp., 951 F.2d 1453, 1460 n.24 (5th Cir. 1992)).

Here, Lambert seeks leave to file an amended complaint that defines PCIA using identical language to that which MDL plaintiffs proposed in their Third Amended Complaint and which the transferee court rejected. The operative pleading defines PCIA as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." Second Am. Master Compl., ECF No. 7-26, ¶ 181. Lambert seeks to substitute the following definition:

> There is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient, including among

> Plaintiffs.[9] The scientific literature has variously referred to Permanent Chemotherapy Induced Alopecia as occurring between [12] to [24] months following chemotherapy treatment. Some literature has indicated that hair loss can be deemed "persistent" six months beyond the completion of chemotherapy, but that is not indicative of permanency.

Proposed Am. Compl., ECF No. 35-1, ¶ 117. Plaintiffs in the MDL sought to amend the Master Complaint using identical language. See Pls.' Mot. for Leave to File Pls.' Third Am. Master Long-Form Compl., ECF No. 7-42, ¶ 194. The transferee court rejected this request to amend, explaining that the court, the parties' experts, and the Fifth Circuit had relied on plaintiffs' six-month definition throughout the course of the MDL. See Order, ECF No. 7-45, at 3–4. The court observed that "the main reason Plaintiffs wish to amend the Long-Form Complaint at this juncture is to save cases that are otherwise subject to dismissal for being filed too late." Id. at 4. This court will follow the transferee court's decision and deny Lambert's Motion to Amend.

To be sure, law of the case "does not and cannot limit the power of a court to reconsider an earlier ruling [because] [t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). However, there is no basis to depart from the transferee court's ruling here. There has been no subsequent trial that produced substantially different evidence, nor has controlling authority since made applicable a contrary decision of law. See Aramony, 166 F.3d at 661. Indeed, transferor courts considering the issue have rejected plaintiffs' requests to amend based upon the transferee court's rationale. See Defs.' Notice of

---

[9] Lambert's proposed Amended Complaint uses the plural, "Plaintiffs," even though she is the sole plaintiff in this case.

Suppl. Authority, ECF No. 40-1; Defs.' Second Notice of Recent Suppl. Authority, ECF No. 43-1; Defs.' Third Notice of Suppl. Authority, ECF No. 56-1.

Finally, the transferee court's decision is not clearly erroneous nor does it work manifest injustice. See Aramony, 166 F.3d at 661. Plaintiffs prosecuted their case in the MDL using the six-month PCIA definition for three years before they sought to change it. In that time, they twice successfully amended the Master Complaint, but neither amendment modified the PCIA definition. As the transferee court aptly stated, "[p]resumably, Plaintiffs made an informed decision to define their injury the way they originally did." Order, ECF No. 7-45, at 5. This court will not permit Lambert to amend her pleading in the manner she seeks.

### III.

Federal Rule of Civil Procedure Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed."[10] Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002)).

> Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief."

---

[10] Although defendants filed an Answer to the First Amended Master Complaint, see Answer, ECF No. 7-17, they have not done so in response to plaintiffs' Second Amended Master Complaint. However, Lambert does not challenge defendant's decision to bring a Rule 12(c) motion at this juncture.

Drager v. PLIVA USA. Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). See Booker v. Peterson Cos., 412 Fed. App'x. 615, 616 (4th Cir. 2011) ("In order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Nevertheless, motions to dismiss and motions for judgment on the pleadings are not identical: "'[u]nlike on a Rule 12(b)(6) motion . . . on a Rule 12(c) motion the [c]ourt may consider the Answer as well.'" Mendenhall, 856 F. Supp. 2d at 724 (quoting Alexander v. City of Greensboro, No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. Aug. 3, 2011)). "The 'factual allegations in the [A]nswer are taken as true to the extent they have not been denied or do not conflict with the [C]omplaint.'" Id. (brackets in original) (quoting Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)). Moreover, "[i]n 'determining a motion for judgment on the pleadings, the [C]ourt may consider documents incorporated by reference into the pleadings.'" Id. (second brackets in original) (quoting Farmer, 393 F. Supp. 2d at 386). However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." A.S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964) (quoting Fed. R. Civ. P. 12(c)). The decision to exclude matters outside the pleadings is "discretionary with the court." Id.

Through the operative pleadings, namely, Lambert's Short Form Complaint and the Second Amended Master Complaint, Lambert asserts claims for strict products liability and negligence, as well as four fraud-based claims under Virginia law. See Short Form Compl., ECF No. 1, ¶¶ 4–5, 13. The court will address each claim in turn.

### A. Strict Products Liability

"Virginia has not adopted a strict liability regime for products liability." Sardis v. Overhead Door Corp., 10 F.4th 268, 280 (4th Cir. 2021) (quoting Evans v. Nacco Materials Handling Grp., Inc., 295 Va. 235, 246, 810 S.E.2d 462, 469 (2018). Accordingly, Lambert's claim for strict products liability is dismissed.

### B. Negligence

Defendants argue that Lambert's negligence claim is time-barred under Virginia's statute of limitations. See Va. Code Ann. § 8.01-243(A). Courts in the Fourth Circuit "treat[] Virginia's statute of limitations as substantive" law to be applied in addressing state-law claims. Adams v. Am. Optical Corp., 979 F.3d 248, 255 (4th Cir. 2020) (citing Joyce v. A.C. & S., Inc., 785 F.2d 1200, 1203 (4th Cir. 1986)). Under Virginia law, "every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243(A). "Virginia courts have repeatedly explained that a plaintiff's cause of action accrues on the actual date of injury, not the date on which that injury is discovered by or communicated to the plaintiff." Adams, 979 F.3d at 256 (citing Lo v. Burke, 249 Va. 311, 317, 455 S.E.2d 9, 13 (1995); Comptroller of Va. ex rel. Va. Mil. Inst. v. King, 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977); Locke v. Johns-Manville Corp., 221 Va. 951, 958–59, 275 S.E.2d 900, 905–06 (1981),

superseded by statute on other grounds, Va. Code Ann. § 8.01-249(4), as recognized in Kiser
v. A.W. Chesterton Co., 285 Va. 12, 17, 736 S.E.2d 910, 913 (2013)).

Lambert alleges that she developed PCIA six months after she completed
chemotherapy, at which time her hair had not regrown completely. See Second Am. Master
Compl., ECF No. 7-26, ¶ 181 (defining PCIA as "an absence of or incomplete hair regrowth
six months beyond the completion of chemotherapy"). She claims that she used an unknown
brand of Taxotere from September 2010 until December 2010. See Short Form Compl., ECF
No. 1, ¶ 10. Accordingly, Lambert's cause of action accrued in June 2011, and the limitations
period on her claims expired two years later, in June 2013.

Lambert's negligence claim is time-barred because she did not file her lawsuit until
February 2018, more than seven years after she stopped using Taxotere and more than four
years after the limitations period expired. Unless circumstances show that this limitations
period should be tolled, her claims must be dismissed.

The Fourth Circuit has held that "in any case in which a state statute of limitations
applies . . . the state's accompanying rule regarding equitable tolling should also apply." Wade
v. Danek Medical, Inc., 182 F.3d 281, 289 (4th Cir. 1999). In Virginia, "statutes of limitations
are strictly enforced and must be applied unless the General Assembly has clearly created an
exception to their application." Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak
Knoll Farm, L.L.C., 290 Va. 5, 7, 773 S.E.2d 162, 163 (2015) (quoting Casey v. Merck & Co.,
283 Va. 411, 416, 722 S.E.2d 842, 845 (2012)). Where no statutory authority exists, Virginia
courts have recognized "that equity will toll a statute of limitations under" two extraordinary
circumstances: "(1) where fraud prevents a plaintiff from asserting [her] claims, or (2) where

[defendants] 'ha[ve] by affirmative act deprived the plaintiff of [her] power to assert [her] cause of action in due season.'" Id., 722 S.E.2d at 164 (citing Schmidt v. Household Fin. Corp., II, 276 Va. 108, 117, 661 S.E.2d 834, 838–89 (2008) and quoting Brunswick Land Corp. v. Perkinson, 153 Va. 603, 608, 151 S.E. 138, 140 (1930)). At the pleading stage, a plaintiff must assert "the existence of an extraordinary circumstance that could not have been avoided by the exercise of due diligence." Id. at 8, 773 S.E. 2d at 164. "Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations." Burns v. Bd. of Supervisors, 277 Va. 354, 359, 315 S.E.2d 856, 859 (1984).

There is no basis to toll the limitations period for Lambert's negligence claim. No statutory exception exists to remove Lambert's negligence claim from the purview of Virginia's two-year statute of limitations.[11] She has not alleged that defendants "misled or deceived [her] in order to prevent [her] from either discovering the existence of a cause of action or filing a timely claim." Schmidt, 276 Va. at 120, 661 S.E.2d at 840. Neither Lambert's Short Form Complaint nor the Second Amended Master Complaint allege that defendants conveyed information to Lambert with the intent to prevent her from filing a timely lawsuit.

Additionally, Lambert has not alleged that defendants have "by affirmative act deprived [her] of [her] power to assert [her] cause of action in due season." Birchwood, 290 Va. at 7, 722 S.E.2d at 164. Again, Lambert does not allege that she had any obstructionist interactions

---

[11] Lambert claims that the Virginia exception to the statute of limitations for obstruction applies in this case. This exception provides in relevant part that "[w]hen the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." Va. Code Ann. § 8.01-229(D). Neither Lambert's Short Form Complaint nor the Second Amended Master Complaint allege that defendants obstructed Lambert from filing her lawsuit. Indeed, Lambert's argument on this point relies on allegations in her proposed Amended Complaint, which is not an operative pleading. Accordingly, this statutory exception does not apply.

with defendants. Moreover, she alleges that as early as 2006, medical journals and news outlets published data that identified PCIA as an effect of Taxotere. See Second Am. Master Compl., ECF No. 7-26, ¶¶ 150–163. There is no basis to toll the limitations period on Lambert's negligence claim, and therefore the claim is time-barred and must be dismissed.

### C. Fraud Claims

Likewise, the two-year statute of limitations on Lambert's fraud-based claims has expired.[12] Under Virginia law, a cause of action for fraud accrues "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249(1). "A statute of limitations question under Va. Code § 8.01-249(1) may be resolved on a threshold motion to dismiss, but only if all the facts necessary for resolution of the motion appear on the face of the complaint or are otherwise indisputable." McPike v. Zero-Gravity Holdings, Inc., 280 F. Supp. 3d 800, 807 (E.D. Va. 2017). Here, defendants' motion is not akin to a "threshold motion to dismiss" because Lambert filed her complaint in the MDL more than six years ago, and the transferee court created a significant body of law of the case. In addition, the Second Amended Master Complaint alleges that as early as 2006, publicly available information was available linking Taxotere and PCIA. See Second Am. Master Compl., ECF No. 7-26, ¶¶ 150–163. Accordingly, the court finds that the issue of whether the limitations period on Lambert's fraud claims has ended is ripe for decision.

---

[12] Defendants focus their statute of limitations argument on Lambert's negligence claim. However, the argument equally applies to her fraud-based claims.

Virginia's statute of limitations rule for fraud claims "places the burden on the plaintiff 'to prove that [she] acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action.'" Informatics Applications Grp., Inc. v. Shkolnikov, 836 F. Supp. 2d 400, 425 (E.D. Va. 2011) (quoting Hughes v. Foley, 203 Va. 904, 907, 128 S.E.2d 261, 263 (1962)). "To comply with the due diligence requirement, the plaintiff must use '[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances.'" Id. (quoting STB Mktg. Corp. v. Zolfaghari, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990)). Discovery is attributed to a plaintiff "by evidence of the possibility of fraud, not by complete exposure of the alleged scam. Merely bringing suit after the scheme has been laid bare . . . will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss." Jones v. Saxon Mortg., Inc., 980 F. Supp. 842, 847 (E.D. Va. 1997) (quoting Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993)).

Lambert alleges that her hair loss persisted after she ceased chemotherapy. Second Am. Master Compl., ECF No. 7-26, ¶ 181. Indeed, she defines her injury, the "absence of or incomplete hair regrowth," as beginning six months after she completed chemotherapy, that is, in June 2011. See id.; Short Form Compl., ECF No. 1, ¶ 10. By this time, numerous articles had been published identifying PCIA as an effect of Taxotere. See Second Am. Master Compl., ECF No. 7-26, ¶¶ 150–158 (discussing presentations and publications from 2006, 2008, 2009, 2010, and 2011 that observed connections between PCIA and Taxotere). Coupled together, Lambert's persistent hair loss and the significant body of literature addressing the link between

PCIA and Taxotere show that, by June 2011, "a reasonable and prudent person would suspect that something was amiss." <u>Schmidt</u>, 276 Va. at 119, 661 S.E.2d at 840. Accordingly, the court finds that Lambert's allegations show that the two-year limitations period on her fraud-based claims began to run in June 2011 and lapsed in June 2013.

Even if the statute of limitations on Lambert's fraud-based claims had not expired before she filed her Short Form Complaint, the law of the case dictates that these claims must be dismissed. In an August 30, 2017, hearing, the transferee court ruled that "any fraud-based claims must be perfected within the short form complaints filed in the individual member cases." Case Management Order No. 39, ECF No. 9, at 3. Six months later, when Lambert filed her Short Form Complaint, she did not include allegations of fraudulent conduct by defendants specific to her case, instead relying on the allegations in the Second Amended Master Complaint. <u>See</u> Short Form Compl., ECF No. 1, ¶ 13 (checking box for fraud-based counts but declining to add allegations specific to herself).

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pled with particularity "as to the time, place and contents of the false representations, the identity of the person making those representations, and what was obtained by the fraud." <u>Swartzendruber v. Sentara RMH Med. Ctr.</u>, No. 5:22-cv-055, 2023 WL 6279361, at *8 (W.D. Va. Sept. 26, 2023) (quoting <u>Foster v. Wintergreen Real Est. Co.</u>, No. 3:08-cv-031, 2008 WL 4829674, at *5 (W.D. Va. Nov. 6, 2008)). While the transferee court did not dismiss the fraud-based counts from the Second Amended Master Complaint, the court ruled that, for an individual plaintiff to pursue those claims, she must add allegations to meet the Rule 9(b) standard. <u>See</u> Case Management Order No. 39, ECF No. 9, at 3.

19

Transferor courts to address fraud-based claims brought by Taxotere plaintiffs have adopted the transferee court's ruling and concluded that such claims cannot survive without plaintiff-specific allegations contained in short form complaints. See Maxwell v. Sanofi-Aventis U.S. LLC, No. 2:23-cv-696, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023) (dismissing plaintiff's fraud-based claims because she did not "include allegations that are specific to her" and instead relied on the Second Amended Master Complaint's "general allegations regarding Defendants' conduct"); Gaynor-Madison v. Sanofi US Servs., Inc., No. 23-0420, 2024 WL 1260580, at *2 (S.D. Ala. Mar. 25, 2024) (citing Maxwell, 2023 WL 7115575, at *2) (same). This court agrees that Lambert's decision to omit allegations specific to her fraud-based claims requires that those claims be dismissed.[13]

## IV.

For the reasons stated above, Lambert's Motion to Amend, ECF No. 35, is **DENIED**, and defendants' Motion for Judgment on the Pleadings, ECF No. 34, is **GRANTED**.

An appropriate order will issue this day.

Entered: *Apr. / 11, 2024*

Michael F. Urbanski
Chief United States District Judge

---

[13] Notably, Lambert's memorandum in opposition to defendants' Rule 12(c) motion does not defend her fraud-based claims as pled in her Short Form Complaint and the Second Amended Master Complaint. See Pl.'s Mem. Opp., ECF No. 36, at 8. Instead, Lambert references her proposed Amended Complaint, which is not an operative pleading in this case.